TROUTMAN SANDERS LLP
Peter N. Villar, Bar No. 204038
peter.villar@troutmansanders.com
Edward S. Kim, Bar No. 192856
edward.kim@troutmansanders.com
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendants
SHORESIDE CAPITAL, LLC, SHORESIDE SPV
FUNDING II, LLC, FPH CAPITAL PARTNERS,
NAVIN NARANG and BRAD BARLOW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FUND RECOVERY SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SHORESIDE SPV FUNDING I, LLC; SHORESIDE LOANS, LLC; DYLAN C. COHEN; RICHARD COHEN; NANCY COHEN; KATHY COHEN; SHORESIDE SPV FUNDING II, LLC; SHORESIDE CAPITAL, LLC; FPH CAPITAL PARTNERS, NAVIN NARANG, BRAD BARLOW, JOHN or JANE DOES, 1 through 10, and ABC CORPORATIONS, 1 through 10,<br><br>Defendants. | Case No. 2:16-cv-06954-SJO-JC<br><br>Honorable James Otero<br>Courtroom: 1, 2nd Floor<br><br>**DECLARATION OF MICHAEL MARSHALL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Dept.: Ctrm. 1, 2nd Floor<br><br>Verified Complaint Filed: September 15, 2016 |

I, Michael Marshall, declare as follows:

1. I am the Chief Financial Officer of FPH Capital Partners and the CEO of Shoreside Capital, LLC. I submit this Declaration in Opposition to Plaintiff's *Ex*

*Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction (the "*Ex Parte* Application"). I have personal knowledge of the matters stated herein, and, if called upon, I could and would competently testify thereto.

2. It is my understanding from reviewing Plaintiff's Ex Parte Application that Plaintiff asserts that it has been seeking to service the loan portfolio at issue since July 28, 2016, and that the Shoreside Capital Defendants have refused to provide the information necessary to service the loans. Those assertions are not true. Instead, Plaintiff affirmatively requested that Shoreside Capital service the loans prior to July 28, 2016, and even after that date, Plaintiff requested time and again, on a recurring week to week basis, for defendant Shoreside Capital to continue to service the loans. In fact, Shoreside Capital repeatedly advised Plaintiff that it preferred to transfer the loan servicing to Plaintiff or its designee, but Plaintiff repeatedly requested and insisted that Shoreside Capital continue to service the loans. Attached hereto as Exhibit 1 is a true and correct copy of an email I sent to Jack Cook on August 30, 2016 in which I stated, among other things, the following:

> Additionally, despite informing you that we no longer wish to service the PAF portfolio due to the lack of an ongoing agreement, Shoreside Capital has received no direction on who/where/when to transfer the existing PAF portfolio to. That being said, because we want to take care of the borrowers who wish to make timely payments and remain in good standing, we continue to service the portfolio. We also continue to want Princeton to have a seamless transition. Again, this is a courtesy to you and the customers/borrowers but we cannot continue to do this in perpetuity without an agreement.
>
> As we have stated before, we are happy to pass along the loans and all supporting documentation as well as re-designate bank accounts for auto-payments to be

29445248 - 2 - DECLARATION OF MICHAEL MARSHALL IN OPPOSITION OF PLAINTIFFS EX PARTE APPLICATION FOR TRO

deposited in. We just need that information when you are ready to provide it and we'd be more than happy to sit down and review any servicing documents you'd like.

3. It was not until October 12, 2016 that Plaintiff finally notified Shoreside Capital of its intention to take over the servicing of the portfolio through a letter dated October 12, 2016 from Plaintiff's counsel, Jeffrey Goldman.

4. I understand that plaintiff Fund Recovery Services LLC ("Plaintiff") is requesting, on an *ex parte* basis, that the Court instruct Defendants to turn over administrative control to (i) the Infinity Loan Management System (LMS) and (ii) all payment processing accounts, including but not limited to the debit card processing accounts and the Automated Clearing House (ACH) account maintained by Data Processing Services (collectively the "Payment Processing Accounts").

5. I have reviewed the *Ex Parte* Application and understand that Plaintiff has taken the position that it is not able to service the subject Loan Portfolio without having administrative control over the LMS and Payment Processing Accounts maintained by Shoreside Loans, LLC. That is not accurate, and I disagree with that assertion.

6. The LMS is simply a software solution offered by Infinity Enterprise Lending Systems (and a host of other companies) to facilitate the management of loans. There is no reason that Plaintiff needs to gain administrative control over *Defendants'* LMS in order to service the subject Loan Portfolio. It is my understanding that Plaintiff already has access to and control over the Loan Portfolio and all underlying data needed to manage and service the loans. Plaintiff can simply input the data into its own loan management system or do so through an outside vendor.

7. Similarly, ACH is simply an electronic payment delivery system which processes electronically credit and debit transfers for businesses. Plaintiff

does not need to gain administrative control over *Defendants'* ACH or Payment Processing Accounts in order to service the Loan Portfolio. Plaintiff can simply use its own ACH account or other payment processing system, or can hire a vendor to process the loan payments.

8. In conclusion, it is my understanding that Plaintiff already possesses all of the information it needs in order to service the Loan Portfolio itself or through an outside vendor. Contrary to its arguments in the *Ex Parte* Application, Plaintiff does not need administrative control over *Defendants'* LMS or Payment Processing Accounts in order to do so.

9. In fact, it is my understanding that by transferring administrative control of the merchant accounts, ACH accounts, and vendor accounts as Plaintiff requests, such transfer will trigger a new underwriting by each vendor and bank of the new controlling entity, in this case FRS. This underwriting is likely to last four to six weeks assuming it is approved at all. It is for this reason that it is highly unusual for a portfolio owner to not have a backup servicer. During the underwriting period of these vendors, the accounts are likely to be frozen and not only will borrowers be in peril during this process, but the portfolio's value will suffer. This is precisely why Shoreside Capital repeatedly requested the name of a new servicer that would presumably have its own merchant accounts, ACH accounts and vendor accounts. In that case, the new loan servicer could simply transfer the loan data already in Plaintiff's possession into its own systems and immediately begin servicing the loans. It is my understanding that the problem created by FRS in this case, is that it has elected to take over the servicing of the loans but it does not appear to have its own systems in place to service the loans, which would be typical for a loan servicer. By attempting to seize administrative control of Shoreside Loan's LMS and ACH accounts, it may actually result in the freezing of those accounts and harm the borrowers as discussed above.

10. I also reviewed the statements made by Philip Burgess in his

declaration in support of Plaintiff's Ex Parte Application. In paragraph 13 of his declaration, Mr. Burgess asserts that "We also learned that funds the Old Shoreside Defendants were collecting from borrowers were being advanced to Shoreside Capital, instead of being utilized to pay down the deficiency between the principal amount due and owing under the Revolving Note and the value of the Eligible Receivables." This factual assertion is simply untrue. Shoreside Capital never received any funds that should have been submitted to Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 19, 2016, at Irvine, California.

_____
Michael Marshall